## Lackey's Estate.    Lackey's Appeal.

*Conversion—First devolution—Sale by trustee.*

While money is sometimes treated as real estate, and is distributed as such, it is at most a fiction which equity resorts to for the accomplishment of certain equitable results. This fiction ends, however, with the first devolution.

A settlor in a deed of trust gave certain real estate to the trustee to hold for one person for life, and upon her death in trust for two others " in equal moieties as tenants in common," with power of sale and reinvestment. The trustee having sold the real estate during the life tenancy and invested the proceeds in mortgages, which investment continued until the death of the life tenant: *Held*, that the sale worked a conversion.

Argued April 5, 1892.    Appeal, No. 229, Jan. T., 1892, by
a distributee, Charles S. Lackey, from decree of C. P. No. 1,
Phila. Co., March T., 1890, No. 561, confirming, on exceptions,
report of auditor to distribute estate under trust deed of Ann
M. Lackey.    Before PAXSON, C. J., STERRETT, WILLIAMS, MC-
COLLUM and HEYDRICK, JJ.

Before the auditor, Edward G. McCollin, the following facts
were agreed on: Ann M. Lackey, in 1855, conveyed certain
real estate to J. Warner Erwin, in trust for Sydney H. Lackey
for life ; and, upon her death, "then in trust, to and for the
only proper use and behoof of Mary S. Lackey and Charles S.
Lackey, children of James and Rebecca A. Lackey, their heirs
and assigns forever in equal moieties as tenants in common."

Power was given the trustee to sell the real estate with the
consent of the life tenant; and "the money arising from such
sale . . . . to again invest is such way and manner as she, the
said Sydney H. Lackey, by writing under her hand may direct
and hold the same in trust to and for the same and like uses,
intents and purposes, and with the same and like powers, pro-
visos and limitations as are hereinabove set forth, limited and
declared of and concerning the premises hereby granted and
conveyed, and to and for no other use, intent or purpose what-
ever."

In pursuance of this power, the trustee, in 1872, with the
consent of Sydney H. Lackey, sold the real estate and invested
the proceeds, with her consent, in mortgages.    The fund re-
mained so invested, and is the fund now accounted for by the
trustee, who filed his account in consequence of the death of
the life tenant in 1889.

Mary S. Lackey, at the time of the sale and conveyance, was
of full age and under no legal disability.    In 1884, she married
William D. Schetky, and died in 1886, intestate and without
issue, leaving her husband surviving.

Charles S. Lackey claimed the whole fund as real estate.
William D. Schetky claimed one half of the fund as personalty
vested in his wife at the time of her death, possession and en-
joyment only having been postponed.

Under the authority of Hitner v. Ege, 23 Pa. 307, the
auditor held that if the fund was real estate, the whole of it

went to Charles S. Lackey, the brother, "as the surviving husband of a woman who had a vested remainder in real estate takes no interest if the wife dies during the continuance of the particular estate."

The report of the auditor continued as follows :

" It must be observed at the outset that we are not called upon to decide the effect of a mere naked power of sale given to the trustee by the deed of trusts without any direction to sell.   The question has passed beyond this, for the sale has actually taken place, the power given by the deed has been duly exercised.   Hence any question of constructive conversion depending upon the words of the deed alone is removed; the action of the trustee in making the sale set that question at rest.   An actual conversion was made, the property was changed into money and invested in the form of personalty.   On behalf of the surviving brother it is urged that an equity is raised in favor of a reconversion, so as to preserve the character of the estate as realty, and hand it down, as it would have descended had it remained unconverted.   Conversion is a fiction raised in equity for the accomplishment of certain equitable results. As applied generally in cases of this nature it is intended to so far preserve the nature of the estate that it may reach the persons intended, by the settlor in a deed of a trust or the testator in a will, to be benefited.   This end once accomplished, the fiction is no longer preserved, but the property becomes in law and equity what it is in fact.   It is manifest that it would be impossible, even if it were desirable to keep up the delusion of such a device through an indefinite number of successions. Hence, a limit has been fixed beyond which the doctrine may not be carried.   This limit is the first transmission, whether by will or deed from the original owner, testator or settlor. ' The necessity of a perfect conversion at some period, being apparent, and neither justice nor policy requiring that a fiction should be substituted for the fact, the proper time for it is when the money has vested in the party entitled to it, after the actual conversion.' LEWIS J., in Pennell's Ap., 8 Harris, p. 517. ' This case (Pennell's Appeal),' say the court in Barley v. Zeigler (16 W. N. C. 218), ' explains what is meant by first descent : it is the descent from the one who died seised of the land.   When the land is converted into money that money re-

tains the character of real estate until it vests in the heir, and when once vested it is to be treated as personalty with all its incidents.' See also the very recent case of Scott's Ap., 137 Pa. 454, where the following language of Judge MITCHELL, in Wentz's Ap., 126 Pa., p. 541, is cited with approval.

" 'It is not uncommon to say that the proceeds of real estate remain realty, etc., but the expression is not accurate. The money never is real estate in law any more than in fact, but for certain purposes and within certain limits it is treated as if it was real estate. The purpose is to preserve the inheritable quality of the estate, so that the title may not be diverted from the previous owner, and the limit is the first devolution.' The opinion then goes on to say: ' The whole doctrine is the creation of equity for a specific purpose, and when that purpose is accomplished the rule ceases to operate. So far, therefore, from the money actually becoming real estate and requiring a positive act of reconversion to restore it to its natural character of money, it never is real estate, and is only treated as such within a limit which all the cases agree is the first transmission, and in the language of SHARSWOOD, J., in Foster's Ap., 74 Pa. 397, it is admitted only for the accomplishment of equitable results.

" 'It may be termed an equitable fiction and the legal maxim, *In fictione juris semper subsistit æquitas*, has redoubled force in application to it. It follows, of necessity, that it is limited to its end. . . . When the purpose of conversion is attained, conversion ends.'

" Tested by the rule thus laid down, the claim of Charles S. Lackey for the share of his sister, Mrs. Schetky, fails. If a conversion had been necessary, its aid could have been invoked in behalf of Mrs. Schetky only in order to vest in her the moiety of the proceeds of the sale. The position of the settlor, Ann M. Lackey, was analogous to that of a testator in a will, and to that of one who died seized of land. The first transmission took place when the property vested in Mrs. Schetky, which occurred when the deed of trust was executed and delivered, giving her an equitable estate in remainder as to a moiety, and this interest having vested in her the right to a further conversion, thereupon perished. ' Being once vested, it is,' in the language of Barley v. Zeigler (supra), ' to be treated as personalty, with all its incidents.' No conversion was

necessary, however, to preserve her interest in the proceeds, as the deed specifically provided that 'the money arising from such sale or sales' should be again invested in trust for the same purposes as were set forth and declared concerning the real estate itself.

"The use of the word 'money' clause, and not the word 'proceeds,' would seem to indicate an express intent to stamp upon the trust estate, after the sale, the character of personalty, and together with the absence of a provision, which a few words would have covered, giving the share of Mary S. Schetky, in case of her death without children, or issue of deceased children, to her surviving brother, warrants the belief that the disposition made by law to the surviving husband is the disposition the grantor, Anna M. Lackey, herself would have made had she contemplated the contingency here presented.

"It was contended by counsel for Charles S. Lackey that the act of the trustee, even if approved of by the life tenant, could not effect the rights of the remainder people, as established by the instrument giving them their rights; that in this case the deed to the trustee was of real estate, and the interests of the remainder people was in real estate, and no action of the trustee could divest their interest or change its character. This would be true if the instrument itself did not give the power to the trustee to sell at his option with the approval of the life-tenant, and there is nothing in the deed to indicate an intention to make the proceeds anything else but money with all its incidents as personalty, the option once being exercised. The disposition is plainly made for the immediate benefit of the life-tenant, and the clause directing an investment in case of sale of the proceeds 'in trust for the same uses, intents and purposes, and with the same and like powers, provisos and limitations as set forth, limited and declared of and concerning the premises,' manifestly means no more than that Mary S. Lackey and Charles S. Lackey were to have equal moieties of the proceeds, as they would have taken, in case of no sale, equal moieties of the land—not that they were to take their share as real estate. The quality of their estate depended upon whether the option to sell was executed or not. JARMAN (on Wills, 2 Amer. ed. *604,) says: 'Sometimes the exercise of trustees' option to convert regulates not merely the dev-

olution of property as between the real and personal representatives repectively of the beneficial objects, but also determines its destination under the will itself, i. e., until conversion, it belongs to one, and when actually converted to another. Large and inconvenient as such a discretion is, yet, if the intention to confer it be clearly manifested, the construction must prevail, in spite of any suspicion that the testator misapprehended the effect of the terms he has employed.' The deed discovers no thought on the part of the settlor as to the disposition of the property beyond the two remainder people named. Evidently she did not contemplate that Charles S. Lackey should receive any part of Mary S. Lackey's share in case of her death, otherwise she would have employed the few words necessary to express this desire.

"It is difficult to see, however, upon what higher equitable ground Mr. Lackey stands with relation to the share of his sister than the surviving husband, especially as he is already a beneficiary under the trust in his own right.

"The share of Mary S. Schetky is accordingly awarded as personal property to her surviving husband, William D. Schetky."

Charles S. Lackey filed exceptions to this report, which were dismissed and the report confirmed by the court below.

*Errors assigned* were, (1) dismissal of exceptions, without specifying them; (2) confirmation of report.

*Robert H. Hinckley* and *Samuel C. Perkins*, for appellant.

*William Morris*, for appellee.

PER CURIAM, April 18, 1892:

We are of opinion there was a conversion of the real estate. It is true, there was not a constructive conversion by reason of the language of the deed creating the trust. Power was therein given to the trustee, at any time during the life of the life-tenant, Sidney H. Lackey, with her consent, to sell the premises, and the money arising from such sale or sales, to invest in trust for the same uses and purposes, limited and declared as to the premises. In pursuance of this power, the trustee, with the consent of the life-tenant, sold the premises in 1872 and invested the proceeds in mortgages. The fund has remained so invested to the present time, and is the one

now accounted for.  It will thus be seen that there has been an actual conversion under the power contained in the trust deed.  While money is sometimes treated as real estate, and is distributed as such, it is at most a fiction which equity resorts to for the accomplishment of certain equitable results.  This fiction ends, however, with the first devolution.  It would be inconvenient and absurd for money to retain the character of real estate from generation to generation.  For the purposes of this case, the position of Ann M. Lackey, the settlor, was precisely analogous to that of a testator in a will, or to one who died seized of the land.  The first transmission took place when the property vested in Mrs. Schetky, which occurred when the deed of trust was executed and delivered, giving her an equitable interest as to a moiety, and this interest having vested in her is now to be treated as personalty with all its incidents : Scott's Ap., 137 Pa. 454.

The decree is affirmed, and the appeal dismissed at the costs of the appellant.