## Charles Ingersoll's Estate.   John M. Thomas's Appeal.

*Will—Trusts and trustees—Power of appointment.*

Testator gave to trustees one fourth of his estate in trust for two grandsons during their minority, with cross remainders in case of the death of either during minority, without issue, and remainder over if both so died, but on the arrival of each at twenty-one his estate was to go to him in severalty. In a subsequent clause of his will he gave his daughter power to revoke the devises and bequests to the grandsons, and to appoint trusts for either or both, first, deferring the time for the receiving of the principal, or secondly, reducing the estate to one for life without right of anticipation or subjection to creditors, and lastly, with or without testamentary power of appointment, " and with remainders to the persons who would be entitled if the child as to whose estate this power is exercised died owner of the same." *Held*, (1) that it was not the intention of the testator that the estates of his grandsons should be fettered beyond their respective lives; (2) and that the daughter while having power to revoke the devise, and to declare a spendthrift trust for life for one of the nephews, had no power to declare that the estate of this nephew upon passing to the other should be held under a spendthrift trust.

In the above case testator authorized his trustees " to sell and convey all or any part of my estate or property which they may hold under this will, and to receive and receipt for the purchase money, and from time to time call in and change any investments," and with the consent of the cestui que trust " purchase real estate, and sell and convey the same." He also directed that they should not be restricted to such securities as trustees are restricted to by law. The daughter by deed gave to the same trustees " power to retain all investments legal or otherwise, and to invest and change investments whenever they shall think advisable without being restricted to what are known as legal securities, and to sell and convey real estate now held, or hereafter acquired." *Held*, that the trustees had power to change investments from personalty to realty, and vice versa, and whatever they did in this respect worked an actual conversion.

During the lifetime of the grandson whose share was being distributed, a ground rent was paid off to the trustees in pursuance of the usual clause of extinguishment in a ground rent deed. *Held*, that such payment did not convert the grandson's interest in the ground rent into personalty. The act of a stranger could not in such a case change the property's heritable qualities.

Argued Jan. 24, 1895. Appeals, Nos. 184 and 185, July T., 1894, and No. 11, Jan. T., 1895, by John M. Thomas et al., trustees, F. F. Maury and Lilian Linderberger, from decree of O. C. Phila. Co., April T., 1883, No. 406, dismissing exceptions to adjudication. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to adjudication.

From the adjudication it appeared that Charles Ingersoll died on August 3, 1883, leaving a will by which he directed, inter alia, as follows :

" With intent to pass all my estate and to execute all powers, I give and devise all my estate, real and personal, to my three sons-in-law, John M. Thomas, James H. Hutchinson and Arthur Amory, their heirs and assigns.

" In Trust as to one-fourth thereof, after payment of my debts and legacies for Charles I. Maury and Francis F. Maury, the children of my deceased daughter Katherine Maury. And I authorize my said trustees to apply the income thereof, or so much as may be necessary to the maintenance and education of the said children during their infancy, and as they respectively attain twenty-one years of age to pay and assign a moiety of

the principal sum and the accumulations to each of the said children.   And if either dies before attaining twenty-one years of age, and without issue, to assign the whole to the survivor, but should both of the children die under twenty-one and without issue, I give the said property to the persons who would take the residue of my property under this will had I survived the said children.   Provided Always, and I hereby devise and declare that it shall and may be lawful for my daughter Ann, wife of Dr. James H. Hutchinson, by any instrument under her hand to revoke the said devises and bequests to the said children of my daughter Katherine and to appoint the share of each child, or that of either of them in trust for the use of the said children, either deferring the time for the receiving of the principal by the said child or children or appointing the same to be held in trust, so that he or they shall be entitled to the income only for his or their lives, and excluding the power of anticipation and the right of creditors to levy on the same, and with or without testamentary powers of appointment, and with remainders to the persons who would be entitled if the child as to whose estate this power is exercised died owner of the same, and also to insert in said appointment such powers of revocation and new appointment as she may deem proper to carry out the intention of my will in respect of the shares of said children. : . .

"I authorize the trustees of the estate devised in trust for my daughters respectively with the consent of the person or persons for the time being entitled to the income thereof, or should such persons be infants, with the consent of the guardians of their estates, to partition and divide the estate and property passing under this will.   And I authorize the said trustees to sell and convey all or any part of my estate or property which they may hold under this will, and to receive and receipt for the purchase money, and from time to time to call-in and change any investments.   And in making investments I direct that their discretion shall not be limited or restricted to such securities as trustees may be restricted to by law, but they may, with consent of the respective cestuis que trustent select any stocks or other securities they may deem advisable, and with the consent of their respective cestuis que trustent they may purchase real estate and sell and convey the same and give receipts for the purchase money."

On Oct. 17, 1888, Mrs. Hutchinson executed a deed, wherein after reciting her following will she declared as follows:

"And whereas, I the said Ann Hutchinson, wife of James H. Hutchinson, M. D., do deem it wise to revoke the devises and bequests to the said two children and to appoint and declare new trusts of the same. Now know all men by their presents, that in pursuance of the power recited, I do declare as follows:

"1. I revoke and annul all such provisions in favor of said children, by my father's will made, as are inconsistent or at variance with the uses, trusts and powers herein declared and created.

"2. I direct that said shares of said children (one fourth of my father's residuary estate) shall be paid over, assigned and conveyed to John M. Thomas, James H. Hutchinson, M. D., and Arthur Amory and the survivors and survivor of them their heirs, executors, administrators and assigns and shall be held by them, upon the following uses, trusts and purposes and with the powers following: In trust, to divide the same into two equal parts or shares and thus to hold each share in trust during the life time of my nephew, Charles I. Maury, to hold one of said shares with power to retain all investments, legal or otherwise, and to invest and charge investments whenever they shall think advisable, without being restricted to what are known as 'legal' securities, and to sell and convey real estate now held or hereafter acquired and to make all necessary deeds of conveyance without obligation on the part of the purchasers to see to or be responsible for the application of the purchase money, and to pay over the whole income to him, the said Charles, free and clear of his debts, contracts, engagements, alienations and anticipations, and all liability therefor, and of and from all levies, attachments and executions: Provided, that during his minority, so much of the income shall be paid to such persons as my husband, or if he be dead, the other trustees shall select, to be applied by such persons without duty of accounting for his benefit, and the balance shall be accumulated to be paid to him upon his attaining full age, or in case of his dying before such time, to the persons who will take the principal; in trust upon the decease of my said nephew, leaving no descendants him surviving then alive, to pay over the principal

of his share, to such persons and for such uses as he, by his last will or writing in the nature thereof, shall appoint, or, if he shall leave descendants him surviving then alive, or if he shall not exercise said power of appointment, in trust, upon his decease to pay over, assign and convey said principal to the persons who would be entitled to take it had the said child died the owner thereof: Provided that to the extent it is lawful for me so to do, and only to that extent, I direct that any share of said principal passing by virtue of said child's decease to his brother Francis F. shall be held by said trustees upon the same trusts, for the same estates for life and remainder, and with the same provisions hereinafter directed by me as to the original share of said Francis F.  In trust during the lifetime of my nephew, Francis F. Maury, to hold one of said shares with power to retain all investments, legal or otherwise, and to invest and change investments whenever they shall think advisable, without being restricted to what are known as 'legal securities,' and to sell and convey real estate now held or hereafter acquired, and to make all necessary deeds of conveyance without obligation on the part of the purchaser, to see to or be responsible for the application of the purchase money and to pay over the whole income to him, the said Francis, free and clear of his debts, contracts, engagements, alienations and anticipations, and all liability therefor, and of and from all levies, attachments and executions: Provided that during his minority so much of the income shall be paid to such person as my husband, or if he be dead, the other trustees shall select, to be applied by such persons without duty of accounting for his benefit, and the balance shall be accumulated, to be paid to him upon his attaining full age, or in case of his dying before such time, to the persons who will take the principal.   In trust upon the decease of my said nephew, leaving no descendants him surviving then alive, to pay over the principal of his share to such persons and for such uses as he, by his last will or writing in the nature thereof, shall appoint, or, if he shall leave descendants him surviving then alive, or if he shall not exercise said power of appointment, in trust, upon his decease, to pay over, assign and convey said principal to the persons who would be entitled to take it had the said child died the owner thereof · Provided that to the extent it is lawful for me so to do, and

only to that extent, I direct that any share of said principal, passing by virtue of said child's decease to his brother, Charles I., shall be held by said trustees upon the same trusts, for the same estate for life and remainder, and with the same provisions hereinbefore directed by me as to the original share of said Charles I.

"3. I reserve to myself the power, by any instrument under my hand, at any time hereafter, to revoke all or any of the uses herein declared and to make such new appointments with revocation of new powers of revocation as shall be lawful for me to make under the provisions of my father's will."

C. I. Maury died in 1893, unmarried and without descendants, leaving to survive him his brother Francis. He left a will by which he directed as follows:

"I hereby revoke all previous wills and testaments. I give and bequeath to Austin C. Maury, the sum of $13,000 (Thirteen thousand dollars) to be used according to agreement made by letter of April, 1892, all debts and obligations since incurred are chargable on this legacy. The residue, if any remains, reverts to Austin C. Maury.

"I give and bequeath to Lilian Lindenberger, in fee simple, the sum of $5,000 (Five Thousand dollars).

"I also give and bequeath to Elizabeth Carter Coles in fee simple the sum of $5,000 (Five Thousand dollars)."

There was no reference in his will to the power of appointment given him in the deed executed by Mrs. Hutchinson. He made no disposition of his real estate, and no gift of the residue of his estate.

It appeared that the trustees had converted some of the personal property of the estate into realty and some of the realty into personalty. The amount of personalty converted into realty in excess of the amount of realty converted into personalty was six hundred and eighty-seven dollars and eighty-nine cents.

It also appeared that a ground rent had been paid off, in pursuance of the usual clause of extinguishment, in the lifetime of C. I. Maury.

The auditing judge, HANNA, P. J., decided that the real estate of C. I. Maury passed absolutely to his brother Francis. without qualification or trust.

He also decided that the personal property passed to the legatees mentioned in the will of C. I. Maury.

On exceptions the court in an opinion by ASHMAN, J., entered the following decree:

" It is, June 18, 1894, adjudged and decreed—

The balance of income due and payable to C. Ingersoll Maury on the day of his death is awarded to his administrator . . . . . . . . . $103.44

The balance of income from real estate since death of C. Ingersoll Maury is awarded to Francis F. Maury . . . . . . . . . . . $170.10

" There being a deficiency of assets to pay legacies, the legacies abate in proportion.

" The balance of personal estate for distribution as shown by the account is :

Invested in securities . . . . . $5,458.61
Cash . . . . . . . . . . .   965.67
                                        —————$6,424.28

To which is to be added the commission charged and which is transferred to account of income from real estate . . . . . . . . . .   $500.00

And balance of income of personal estate from supplemental account . . . . . . . . . .   $143.22
                                                          ————————
                                                          $7,067.50

Deduct cost of filing account in register's office . . . . . . . . . . . .   $18.50

Deduct cost of clerk of orphans' court.   10.00

Deduct cost of copy of adjudication . .   10.00

Deduct fee and additional fee to counsel of trustees . . . . . . . . . .   150.00
                                                      ————   $188.50
                                                              ————————
                                                              $6,879.00

" The trustees will sell the securities set forth in account for the market price and from the proceeds of sale and cash balance (after deducting charges) pay the collateral inheritance tax and thirteen twenty-third parts of the net balance to Austin C. Maury, five twenty-third parts to Lilian Lindenberger, and five twenty-third parts to Elizabeth Carter Coles.  It is decreed that the real estate of the said trust belongs to and is

vested in Francis F. Maury absolutely in fee clear of all trust, subject to the payment of the proportion of the trustees' commissions for so much of the said real estate converted upon which no commission has been paid, to wit, the sum of $187.50, and also subject as respects 514 Walnut street to the payment to said trustee of the further sum of $329, the one eighth part of the cost of certain alterations and improvements of 514 Walnut street made since the death of Charles Ingersoll Maury ; but, the court being of opinion that all personal estate used by the trustees of the will of Charles Ingersoll, in the purchase of land or in the permanent improvements thereon (although properly so used under the power conferred on them by the will of Charles Ingersoll) should be treated and distributed as personal property and pass by the will of Ingersoll Maury, and it having been agreed by counsel that the statement hereto annexed, marked A, and which is hereby made part of this decree, is a correct statement of all conversions, both of real into personal estate, and of personal estate into real, made by the said trustees (including the sum of $329 expended in permanent improvements upon 514 Walnut street in 1894, since the death of C. I. Maury), it is decreed that the sum of $687.89 is the net amount of personal property which has been converted into realty by the trustees, and that the same shall be paid (if he so elects) by the said Francis F. Maury, who is entitled to the real estate, but should he decline to pay the same, then on the application of any of the parties in interest an order will be made for the sale of this interest by Francis F. Maury, in which the trustees shall join, each parcel that has been bought or improved being only liable for the money invested in that parcel (as is shown by the statement marked A hereunto annexed) ; and the proceeds, less collateral inheritance tax and less also the two sums of $187.50 and $329, payable to the trustees as above mentioned, shall be applied to the appointees or persons entitled under the will of C. Ingersoll Maury, and the balance (if any) paid to F. F. Maury. Should Francis F. Maury elect to pay the amount so ascertained to have been invested in real estate or in any one or more of the separate parcels thereof, then upon payment of the amount so ascertained as well as the sum of $187.50 above mentioned and (if he shall elect to take his interest in premises 514 Walnut street) the further sum of

$329 above mentioned payable to the trustees, the said trustees shall convey to him in fee the interest of C. Ingersoll Maury in all of the real estate (or in such parcel or parcels thereof as the said F. F. Maury shall have so paid the charge against, and such parcels as are not subject to any charge on account of conversion) belonging to the estate of Charles Ingersoll as evidence of his title.

" Any party in interest may appeal from this decree on giving security for costs only, the trustees retaining the accruing income, to be accounted for as by the final decree it shall be ascertained who are entitled to the same."

*Errors assigned* by John M. Thomas et al., trustees, were, (1) in holding and decreeing that the share of the estate of the decedent Charles Ingersoll Maury, which passed to his brother Francis F. Maury, vested in such brother freed and discharged from the trusts and limitations imposed upon it under the instrument of revocation and new appointment executed on the 17th day of October, 1888; (2) in awarding by its decree the real estate of the decedent Charles Ingersoll Maury to his brother Francis F. Maury, freed and discharged from the limitations and trusts imposed upon the estate so passing by the instrument of revocation and new appointment executed the 17th day of October, 1888; (3) in awarding that part of the estate of the decedent Charles Ingersoll Maury consisting of real estate to his brother Francis F. Maury in fee simple absolutely.

*Errors assigned* by F. F. Maury were, (1) in holding that the personal estate used by the trustees of the will of Charles Ingersoll, under the power therein contained, in the purchase of lands or in permanent improvements thereon, should be treated and distributed as personal property and pass by the will of C. Ingersoll Maury; (2) in not holding that such purchase of real estate by the trustees under the power contained in testator's will was an absolute conversion, and that such real estate therefore passed under the will of Charles Ingersoll to Francis F. Maury; (3) in not holding that all the real estate which belonged, at the death of C. Ingersoll Maury, to his share of the estate of Charles Ingersoll, passed absolutely and in fee

simple to Francis F. Maury; (4) in holding that Francis F.
Maury's title to each parcel of real estate, which the trustees
had bought was subject to payment by him of the net amount
of personal property, which had been expended by the trustees
in its purchase or improvement; (5) in decreeing that $687.89,
the net amount of personal property which had been converted
into real estate by the trustees, should be paid by Francis F.
Maury; (6) in decreeing that, should Francis F. Maury not
elect to pay the said sum of $687.89, a sale of the real estate
should be made to raise that sum.

*Errors assigned* by Lilian Lindenberger were, (1) in not
finding and holding that the whole estate, real as well as per-
sonal, over which C. Ingersoll Maury had power of appoint-
ment, passed by his will in proper execution thereof; (2) in
not finding and holding that the proceeds of the ground rent,
upon premises at Fourth and Willing's alley, Philadelphia,
viz : $50,000 received in cash by the trustee when extinguished,
July, 1892, was personalty and to be so considered, and in
not awarding one eighth of it to be distributed in the propor-
tions mentioned in the will of C. Ingersoll Maury.

*George W. Biddle*, for John M. Thomas et al., trustees.—The
intention of the testator was to secure an equal portion of the
estate to his grandchildren for their personal benefit and enjoy-
ment.  It was his purpose that the survivor should take and
hold the whole share of his estate given by him to both in pre-
cisely the same mode of enjoyment.

*William M. Meigs* and *John Samuel*, for Francis F. Maury.—
Mrs. Hutchinson had no power to extend the conditions imposed
by her upon the estates of her nephews beyond their lifetime.
    There is nothing in the will of Charles Ingersoll which mani-
fests his intention that that which was personal estate when he
died, after having been turned by his trustees under a power
given by him to them for that purpose into real estate, shall
be treated as personal estate: Pomeroy's Eq., sec. 1159, p.
1766; Wharton v. Shaw, 3 W. & S. 124; Davis's App., 60 Pa.
118; Fletcher v. Ashburner, 1 Leading Cases in Equity, 846;
3 Pomeroy's Equity Jurisprudence, p. 1769; 1 Jarman on Wills,

530; Willing v. Peters, 7 Pa. 287; Stoner v. Zimmerman, 21 Pa. 394; Lackey's App., 149 Pa. 7; White v. Howard, 46 N. Y. 144; Kouvalinka v. Geibel, 40 N. J. Eq. 443; Atwell v. Atwell, L. R. 13 Eq. 23; Rich v. Whitefield, L. R. 2 Eq. 583; Walter v. Maunde, 19 Ves. 424; Cole v. Wade, 16 Ves. 27; Brown v. Bigg, 7 Vesey, 280; Polley v. Seymour, 2 Younge & Collyer's Exch. 708; Wright v. Rose, 2 Sim. & Stuart, 323; Lucas v. Brandreth, 28 Beav. 273; Jarman on Wills, 1531–1533; Atty. Gen. v. Mangles, 5 M. & W. 120; Hobson v. Neale, 17 Beav. 178; Atty. Gen. v. Ailesbury, L. R. 16 Q. B. 408.

The donee of a power has no powers but such as the donor has conferred: Wickersham v. Savage, 58 Pa 365; Horwitz v. Norris, 49 Pa. 213.

*Frank R. Savidge*, for Lilian Lindenberger.—Realty as well as personalty passed by the will of C. Ingersoll Maury: Erisman v. Poor Directors, 47 Pa. 509; Laughlin's Est., 131 Pa. 337; Roland v. Miller, 100 Pa. 50; Bispham's Eq., 2d. ed. sec. 310; Willing v. Peters, 7 Pa. 287; Chew v. Nicklin, 45 Pa. 84; act of Feb. 24, 1834, P. L. 73; Edward's App., 47 Pa. 153.

The proceeds of the ground rent passed by the will of C. Ingersoll Maury: Sayers's App., 79 Pa. 431; Shepherd's Est., 8 Pa. C. C. 520; Squire's Est., 37 L. I. 16; Willing v. Peters, 7 Pa. 287; Hunter v. Anderson, 152 Pa. 386; Huff's App., 2 Pa. 227; Aubert's App., 109 Pa. 460.

### THOMAS'S APPEAL.

OPINION BY MR. JUSTICE MITCHELL, April 29, 1895:

It is conceded that the interest of Chas. Ingersoll Maury in his grandfather's estate did not pass to him directly in fee on coming of age, under the devise in the latter's will, but was changed under the proviso giving Mrs. Hutchinson the power to revoke the devise and make new appointments or trusts as to the shares of the two grandsons. The simplest way therefore of getting to the question raised in this case, is to ascertain first, what was the state of facts or circumstances existing at the death of C. I. Maury; secondly, what was Mrs. Hutchinson authorized by her father's will to do in such contingency; and thirdly, what had she actually done.

First, C. I. Maury was of full age, unmarried, and without descendants.  His heir and next of kin, who in the language of his grandfather's will "would be entitled if he had died owner of the estate," was his brother Francis.  C. I. Maury left a will which was held by the learned court below to be a valid exercise of a power of appointment as to personalty, and this adjudication not being objected to must be taken to be correct for the purpose of this appeal.  None of these facts is disputed.

Secondly, Mr. Ingersoll's will gave each of his grandsons a fee in one eighth of his estate.  The two parts were to be held together in trust during the minority of the grandsons, with cross remainders in case of the death of either during minority and without issue, and remainder over if both so died, but as each arrived at twenty-one his estate was to go to him in severalty. It is important to observe that there is no indication anywhere in the will that the estates were to be joint or in common.  But as the testator was somewhat advanced in years and his grandchildren infants, he gave his daughter Mrs. Hutchinson power to revoke the devises and bequests to them and to appoint trusts for either or both, first, deferring the time for the receiving of the principal, or secondly, reducing the estate to one for life without right of anticipation or subjection to creditors, and lastly, with or without testamentary power of appointment. There is a further power of revocation and new appointment which is not material to this case.  These are all the powers that are given to Mrs. Hutchinson, and while they are very large, they do not include any authority to direct the disposition of the estate of either grandson after his death.  On the contrary this is expressly provided for by the testator himself in the next part of the same sentence where, after giving his daughter power to grant or withhold a testamentary power of appointment, he continues, "and with remainders to the persons who would be entitled if the child as to whose estate this power is exercised died owner of the same."  It is manifest that the testator did not intend that the estates of his grandsons should be fettered beyond their respective lives.  As they were young when his will was written, and their future development and circumstances uncertain, he delegated his discretion during their infancy to his daughter, in whose judgment he had confidence.  If she should not exercise this discretionary power,

each grandson on attaining his majority would come into full possession of his estate at once under the direct gift of the testator's will.   If however the time of enjoyment was deferred, or a trust created by Mrs. Hutchinson as to either, (and it is to be noted as already said that they are treated throughout both the will of Mrs. Ingersoll and the deed of Mrs. Hutchinson as separate,) then the remainder was to be to the persons who would be entitled if the child died owner of the estate.   Such remainder would become effective only in case Mrs. Hutchinson withheld the power of testamentary appointment, or in case such power though given was not exercised.   In either contingency the testator himself directed to whom the remainder should go.   He was an experienced lawyer, and he had probably observed that while the prudence and foresight of age are a valuable protection to the young, yet the wisest can see but a little way into the future, and the attempt to guide the course of events too far ahead not infrequently causes more loss than letting the future take care of itself.   Whether this was the testator's thought or not, it is plain that he did not contemplate that his control, either direct or delegated, should continue beyond the life of each grandson.

Thirdly, Mrs. Hutchinson in the exercise of her power under the will, revoked the devise to her nephew C. I. Maury and declared a spendthrift trust for life for him, with a power of testamentary appointment in case he left no descendants surviving; and if he should leave descendants or fail to exercise his power of appointment, then remainder in the language of her father's will to the persons who would be entitled to take if said child died owner thereof.   To this declaration of trust however she added a proviso, " that to the extent it is lawful for me to do so, and only to that extent, I direct that any share of said principal passing by virtue of said child's decease to his brother Francis F., shall be held by said trustees upon the same trusts . . . . hereinafter directed by me as to the original share of said Francis F."   From what has been already said under the second head, it follows that this limitation was in excess of the power given by testator's will.   C. I. Maury having exercised his power of testamentary appointment as to his personalty only, his real estate at his death passed to his

brother Francis directly under his grandfather's will, free of all trusts.

Decree affirmed.

### MAURY'S APPEAL.

OPINION BY MR. JUSTICE MITCHELL, April 29, 1895:

The will of Charles Ingersoll gave his trustees very ample control over the estate committed to their charge, including power to " sell and convey all or any part of my estate or property which they may hold under this will," and with the consent of the cestui que trust, to " purchase real estate and sell and convey the same." These words show his intention. The trusts he had particularly in contemplation were for his two grandsons during their minority and for three married daughters. The latter had the prospect of many years of life before them, and the trusts as to them at least were therefore likely to be of long duration. His intent was manifestly to commit the estate as amply as possible to the management and discretion of the trustees, and in so doing he directed that they should not be restricted to such securities as trustees may be restricted to by law, and intended that they might convert from one kind of property to another.

Mr. Ingersoll's will also gave power to his daughter Mrs. Hutchinson to revoke the devises to his grandsons, and to declare trusts for their lives. In the exercise of this power Mrs. Hutchinson gave to the same trustees "power to retain all investments legal or otherwise, and to invest and change investments whenever they shall think advisable without being restricted to what are known as legal securities, and to sell and convey real estate now held or hereafter acquired." This language, as emphatically as that of her father's will, shows Mrs. Hutchinson's intention that the trustees under her appointment should have a power of conversion between real and personal estate. The power to sell the realty is express and the power to purchase is necessarily implied in the phrase "hereafter acquired."

The will of Mr. Ingersoll, being concerned only with the limitations on the estates and trusts to be declared by her, does not in terms give his daughter authority to direct the trustees whom she may appoint, as to their investments. Whether it

should be implied from the large powers given for the creation of the trusts it is not necessary to decide, for whether the authority of the trustees of C. I Maury's estate over investments be considered as arising from the terms of Mr. Ingersoll's will, or from the language of Mrs. Hutchinson's deed, in either case, their powers are derived from the testator, and are ample to change investments from personalty to realty, and vice versa, and whatever they did in this respect worked an actual conversion as effectually as if it had been done by the testator himself.

This result not only follows from the intention of the testator and the transmission of powers from him to the trustees, but is also in accord with the decisions.   In Wharton v. Shaw, 3 W. & S. 124, the rule was thus expressed by Kennedy, J., " the estate though real at the time of the making of the will, as also at the death of the testator, was certainly changed afterwards by the sale made of it, into personal estate.   And being so changed by an authority given by the testator himself in his will to his executors, it can no longer be considered real estate, unless from his will it clearly appears to have been his intention that the money which might arise from the sale should be considered real estate, or be again invested in the purchase of other real estate."   See also Lackey's Estate, 149 Pa. 7.

The conversions therefore made by the trustees from real to personal estate, or vice versa, in pursuance of their powers, during the life of C. I. Maury, were actual and legal, and upon his death such property passed according to its actual status at that time.

The decree is directed to be modified in accordance with this opinion.

LINDENBERGER'S APPEAL.

OPINION BY MR. JUSTICE MITCHELL, April 29, 1895 :

The first assignment of error, that the learned court below erred in not finding that the whole estate over which C. I. Maury had a power of appointment passed by his will, rests on the argument that by the will of Charles Ingersoll or the deed of declaration of trusts by Mrs. Hutchinson, one or both, the whole share of C. I. Maury in his grandfather's estate had become personalty.   There is nothing in either of these papers which will sustain such contention.

The estate of Mr. Ingersoll at his death consisted of both realty and personalty, and his will not only treats it as such, but contemplates that it shall continue in both forms as he left it, unless changed by the trustees under the powers given them for that purpose. The will gives and devises all his " estate, real and personal," on an active and continuing trust, with authority to " make partition," to buy and sell real estate, and " convey " the same. The testator was a lawyer and must be presumed to have used these terms in their proper legal sense, as applicable to real estate. There is nowhere any direction to sell, but only a discretionary power to do so. Nothing in the will indicates an equitable conversion either by operation of law or by the intention of the testator.

Nor is there any such effect due to the deed of appointment of trusts by Mrs. Hutchinson, even supposing she had authority to direct a conversion. The estate as to which she appointed the trusts under the power in her father's will consisted of both realty and personalty, and her intent was to pass it under the trust just as it was, with large discretionary powers of management and conversion. These powers have been discussed in Maury's Appeal, opinion filed herewith, and need not be enlarged upon here.

The other assignment of error is to the refusal of the learned court below to treat the money representing the principal of a ground rent paid off, as personalty. The subject of the conversion of the estate of C. I. Maury from realty to personalty or vice versa, by the trustees, has been considered in Maury's Appeal, supra, and all we need do here is to point out the distinction which produces different results in the two cases. It was there held that a sale and conversion by executors or trustees, under an authority in the will, even though merely discretionary, was equivalent to a sale by the testator, and worked an actual and legal conversion, unless the will showed the testator's intention to the contrary. In the present case the element of the trustees' discretion and intention is wanting. The ground rent was paid off not by choice of the trustees but by the ground tenant by virtue of his legal right. The change therefore was not the act of the testator, or his representatives. The act of a stranger cannot change the property's heritable qualities. It was real estate in the testator's hands and passed

as such by his will.   There was no conversion by the exercise
of the powers of the trustees, and the money came into their
hands as trustees for C. I. Maury with the quality of real es-
tate as the rent had been which it represented.   It remained
so until the time of his death, and was real estate for the pur-
poses of his will.   This however was the first devolution, and
ended its temporary quality as real estate.   When it passes
under the will of his grandfather to Francis F. Maury (see
Thomas's Appeal, opinion filed herewith) it resumes in his
hands its normal character of money.

The principle of this case, the controlling effect of the ab-
sence of the trustees' exercise of their delegated power, distin
guishes it from the line of cases of which Wharton v. Shaw, 3
W. & S. 124, and Lackey's Estate, 149 Pa. 7, are types, fol-.
lowed in Maury's Appeal, supra.   Though we have not reached
it by the same process, we are of opinion that the result arrived
at by the learned court below was right.

Decree affirmed at the costs of the appellant.