MARTHA M. PETERS *et al.* *v.* KANAWHA BANKING & TRUST COMPANY *et al.*

(No. 8486)

Submitted February 24, 1937. Decided March 30, 1937.

MAXWELL AND RILEY, JUDGES, dissenting.

*Lilly & Lilly* and *David G. Lilly, Jr.,* for appellants.
*Lively, Lively & Stambaugh, Price, Smith & Spilman,*
*J. M. Woods* and *B. J. Pettigrew,* for appellees.

FOX, JUDGE:

Caroline Heeter died, from injuries sustained in an automobile accident, on September 9, 1929. At the date of her death, she was the owner of valuable real estate in the City of Charleston, and a small amount of personal property. On May 29, 1929, she executed a will, by which she first directed payment by her executors, of all her just debts and funeral expenses, and next bequeathed to her daughter, Hazel T. Martin, all of her household and kitchen furniture, except a piano; then followed pecuniary bequests of $4,000.00 to Martha M. Peters; $4,000.00 to Caroline P. McClintic; $10.00 to William B. Heeter; $500.00 to Willis J. Heeter; $500.00 to Della Chaney Heeter; $4,000.00 to Zula Thompson, and $500.00 to Milo L. Heeter. These bequests aggregated $13,510.00, and were made to sons and daughters of the testatrix, except in the case of Della Chaney Heeter, she being the wife of a son of the testatrix. The last three clauses of the will are as follows:

"Tenth: All the rest, residue and remainder of my estate, both real and personal, of every kind and description and wherever situated, which shall belong to me or be subject to my disposal at the time of my death, I give, devise and bequeath to my daughter, Hazel T. Martin, absolutely and in fee simple. This bequest is made in addition to the love and affection which I bear to my said daughter also for the reason that my said daughter has expended a considerable amount of money in the improvement and making repairs upon my real estate for which she has not been compensated.

"Eleventh: In case of my executors hereinafter named shall find it necessary or convenient in the settlement of my estate and payment of the legacies and devises hereinbefore

set forth, I authorize and empower my said executors to sell and convey any or all of my real estate and personal property, with full power and authority to make, execute and deliver proper deeds or other instruments of writing necessary or proper to transfer and pass the title to the purchasers, with the right to collect and receipt for the purchase money for the same, without any obligation on the part of any purchasers of said property, or any parts thereof, to see to or in anywise be liable or bound for the application thereof.

"Twelfth: I hereby constitute and appoint the Kanawha Banking & Trust Company, a corporation, of Charleston, West Virginia, and my daughter, Hazel T. Martin, to be executors of this my Last Will and Testament."

There was an appraisal of the estate from which it appears that the personal property was valued at $265.-16, represented by money in bank, and the real estate at the sum of $15,000.00. It appears that the testatrix was indebted in about the sum of $2,000.00 at the time of her death, and, of course, consideration must be given to costs of administration and funeral expenses.

The executors qualified and became responsible for the estate intrusted to them by the will. The real estate mentioned in the will consists of a lot on Quarrier Street, in the City of Charleston, on which is located a residence and apartment building, and rents have been received therefrom during all of the time subsequent to the death of the testatrix. These rents have been collected by Hazel T. Martin, the residuary devisee and legatee, and one of the executors, and the question of their disposal is one of the vital issues in this case. The executors, and Hazel T. Martin, have paid interest on the indebtedness of the testatrix, have expended money in the payment of taxes on her real estate, and for repairs thereto; funeral expenses amounting to $703.28 were paid by Hazel T. Martin, and she also paid the sum of $200.00 to Milo J. Heeter, one of the legatees.

Zula Thompson, one of the legatees named in the will, was the driver of the automobile, from the operation of

which, Caroline Heeter lost her life, and a question arose as to the liability of the said Zula Thompson to the estate of the decedent for negligence in connection with her death. After extensive correspondence between the executors of the estate and Zula Thompson and her counsel, a release was finally executed by all the heirs at law of Caroline Heeter, releasing the said Zula Thompson from such alleged liability. About the time this release was executed, Zula Thompson assigned to Hazel T. Martin the legacy of $4,000.00 to which she was entitled under the will, and the right to such legacy is now claimed by the assignee.

Notwithstanding the power vested in the executors to sell the real estate of the decedent, no sale was made. From time to time efforts were made to procure loans on said property, sufficient to pay the debts and at least a part of the legacies, but these efforts failed. Some eight months after the failure of the last effort along this line, this suit was instituted.

The purpose of this suit, instituted early in 1933 by Martha M. Peters, Caroline P. McClintic, William Heeter, Willis J. Heeter, Della Chaney Heeter and Milo L. Heeter, legatees, against the Kanawha Banking & Trust Company and Hazel T. Martin, executors of the will of Caroline Heeter, and Hazel T. Martin in her own right, was to secure an accounting from the said executors, and have a sale of the real estate of which Caroline Heeter died seized, and secure the payment of the debts of her estate and the legacies bequeathed by her to the plaintiffs. The principal points raised in the litigation affect the right of Hazel T. Martin to the Zula Thompson legacy, and her right to appropriate the rents derived from the real estate of the decedent. There are other minor questions raised on the record, but a decision on the two points mentioned will, in a large measure, dispose of the other questions.

The court below, by its final decree entered upon the report of a commissioner, ascertained and decreed certain debts against the estate; the pecuniary legacies mentioned in the will, with interest from the death of the

decedent, in effect, relieved the executors from any duty to account for rents accruing after the death of Caroline Heeter, received from real estate owned by her, and directed sale of such real estate by special commissioners appointed for that purpose. From this decree, the plaintiffs appeal.

Hazel T. Martin, individually, assigns cross error in her brief: One, based on the failure of the court below to sustain her demurrer to the bill of the plaintiffs because of the joinder of two separate causes of complaint; two, failure to decree to her money expended in improvement of the real estate of the decedent; and, three, the failure of the court to abate the legacies provided for in the will to the extent necessary to provide for the payment of the sum claimed by her to be due on account of improvements to real estate mentioned in the will.

The court below was clearly right in decreeing to Hazel T. Martin the Zula Thompson legacy. While it is true that under Code, 55-7-6, the executors were the only persons who could have maintained a suit to recover damages for the death of Caroline Heeter, it is likewise true that the parties who would . have benefited from any recovery are the beneficiaries named in the statute, the heirs at law of the decedent. Even if there had been a recovery, the amount thereof could not have been administered by the executors, as a part of the estate disposed of by the will, but would have been paid by them to such heirs at law, independently of the will. These heirs at law having released Zula Thompson from liability, she could have asserted such release as a defense against any suit instituted against her by the executors, on the claim of liability so released. *Fetty* v. *Carroll, Admr.*, 118 W. Va. 401, 190 S. E. 683, decided at this term. There is evidence to show that the assignment by Zula Thompson to Hazel T. Martin of the legacy for $4,000.00 was voluntarily made, upon considerations having no relation to the release of the claim against her for damages arising out of the death of Caroline Heeter, and there is no sufficient showing that the assignment of such legacy was the result of the release in question.

Coming to a consideration of the intent of the testatrix with respect to the payment of the legacies mentioned in the will, it is quite clear that the testatrix intended that these legacies should be paid at all events. Not only does she bequeath these specific sums of money, but she further directs the sale of her real estate for the express purpose of paying debts and legacies. Her death having occurred within a few months after the execution of the will, it is reasonable to assume that the status of her property was practically the same at the time of the execution of the will as it developed to be at the date of her death; and it is fair to argue that, as she only possessed a small amount of personal property, she must have understood that only by resort to her real estate could these legacies be paid, and that the same would have to be sold. There was no other property from which they could be paid. The legacies, therefore, were intended to be charges on the real estate of which the testatrix died seized, and must be paid before the payment of any sum to the residuary legatee. *Couch* v. *Davis' Exr.*, 23 Gratt. (Va.) 62; *Wood* v. *Sampson's Exr.*, 25 Gratt. (Va.) 845, 847; *Thomas* v. *Rector*, 23 W. Va. 26; *Bird* v. *Stout*, 40 W. Va. 43, 20 S. E. 852; *Earle* v. *Coberly*, 65 W. Va. 163, 64 S. E. 628, 17 A. & E. Cas. 479; *Rinehart* v. *Rinehart*, 98 W. Va. 93, 126 S. E. 402, 42 A. L. R. 649; *Henderson* v. *Potters' Orphan Home*, 99 W Va. 46, 127 S. E. 725; Harrison on Wills, section 325. Of course, the costs of administration, funeral expenses, and the debts of the decedent, being first charges on the estate, in the order named, must be paid before legacies.

This brings us to a discussion of what is meant by the residuary clause of the will under consideration. It will be noted that the first nine clauses of the will provide for the payment of money either for debts and funeral expenses, or to legatees. The tenth clause, which is the so-called residuary clause, provides that "all the rest, residue and remainder of my estate" is devised to Hazel T. Martin, absolutely and in fee simple. The use of the words "rest, residue and remainder" imply that some part of the estate has been appropriated, and it is

obvious that what is meant by "the rest, residue and remainder" of the estate is what remains after the payment of costs of administration, and the sum of money necessary to pay debts, funeral expenses and bequests. It will be observed that there is no specific devise of the real estate involved to Hazel T. Martin. What she gets from the will, other than the household and kitchen furniture, arises from this residuary clause, which is general in its nature. Therefore, what she took under this clause was the remainder of the estate after payment of the costs of administration, debts and legacies.

With this background, we next come to the question of the powers and duties of the executors with respect to the real estate. In the first place, the wording of the will shows that the testatrix believed she was providing more generously for Hazel T. Martin than any other person named in the will, because she explained that the residuary devise and bequest in the will were made because of advancements made by Hazel T. Martin to the testatrix, in her lifetime, in the way of repairs and improvements to her real estate, which had not been paid to her. It is clear, also, that while the power of sale vested in the executors is, by the language of the will, a discretionary one, the necessity for sale must have been known to the testatrix, because with the small amount of personal property, there was no means of providing for these bequests without a sale of the real estate. It may be contended that the testatrix thought it possible that, out of the rents of the real estate or from loans, the debts and legacies might be paid without a sale of the property, but if this be true, the active administration of the estate by the executors must have been contemplated. In any aspect of the case, more than a naked power of sale was vested in the executors because the carrying out of the purposes and intentions of the testatrix required management and control, and the exercise of discretion. The legacies, if paid, had to be paid by the executors, and payments required either the collection of rents, securing of loans on the property, or its sale. This is not the usual case where title to real estate passes to

an heir or devisee, which may be divested by the exercise of a naked power of sale vested in the executors. What the testatrix must have had in mind was the intrusting of this estate to her executors, with power of management and control, with full power to sell and convey, in order to carry out the provisions made for her legatees, which she expected to be done at all events, leaving the residue to Hazel T. Martin. The vesting of such power in the executors, under the circumstances, created a trust for the use and benefit of creditors of the estate, the pecuniary legatees and the residuary legatee. The entire estate passed to the executors, for the purposes of this trust, and carried with it the right to collect rents, pay taxes, provide for repairs and eventually dispose of the property if that step should be necessary to carry out the terms of the will. The discretion vested in the executors as to the time and necessity of sale, if given a literal meaning, tends to raise their authority above a naked power of sale.

It must be held that, under the circumstances of this case, the power vested in the executors to sell and convey the real estate of the decedent was a mandatory direction to make such sale. In no other way can the provision of the will be executed. This situation calls for the application of the equitable doctrine of conversion, which has its basis in the maxim "Equity regards that as done which ought to be done". We are not unmindful of the fact that to create such equitable conversion of land into personalty, there must be either "(1) positive direction to sell, or, (2) absolute necessity to sell in order to execute the will." Story's Equity Jurisprudence (14th Ed.), section 1091. "It is not essential, however, that the direction should be express in order to be imperative; it may be necessarily implied." 3 Pomeroy's Equity Jurisprudence (4th Ed.), section 1160. Referring to conversion under a will, arising from authority to sell, the rule is stated that "The authority to sell may be either express or implied because of its necessity to carry out the terms of the will". Story's Equity Jurisprudence, section 1908.

"* * * the intention to convert may be implied as where a testator authorizes his executors to sell his real estate and where it is apparent from the general provisions of the will that he intended such estate to be sold although the power of sale is not in terms imperative. * * * The necessity of a conversion of real estate into personalty to accomplish the purpose expressed in the will, is equivalent to an imperative direction to convert and effects an equitable conversion, although the language used is in form permissible and authoritative rather than mandatory. * * * Where from the provisions of a will there is a manifest intention, express or plainly implied, to create from blended realty and personalty a fund in money for the purpose of distribution, it is equivalent to an express direction to sell."

13 C. J. 862.

"To establish a conversion the direction to convert must be positive and explicit, and the will, if it be a will, or the deed, if it be by contract, must decisively fix on the land or the money the character intended to be given to it. In other words, there must be an imperative absolute direction to convert irrespective of all contingencies, and independent of all discretion. It has been held, however, that when the direction to convert is apparent from the whole will, whether expressed or implied, then the duty and obligation to convert is imperative, and the doctrine of equitable conversion applies. So where the general scheme of a will requires a conversion, the power of sale, although not in terms imperative, operates as a conversion; and this will be deemed to be immediately, although the donee of the power is vested, for the benefit of the estate, with a discretion as to the time of sale. But the will must, in terms or by necessary implication, disclose an intent to convert, in order to sustain the theory of equitable conversion."

6 R. C. L. 1075.

"To have the effect in equity of a conversion, the direction to sell or buy, as the case may be,

must not be merely optional, it must be imperative. The intention, however, to convert may be implied without express words directing a conversion. It is sufficient if such intention be clear. Even though the words used in the will are not imperative in form yet if read in connection with the entire will, the intention to convert is clearly manifested, it is sufficient to effectuate the conversion."

Harrison on Wills, section 291.

The doctrine of equitable conversion is well recognized by the decisions in this state and Virginia. *Tazwell* v. *Smith's Admr.*, 1 Rand. (Va.) 313, 10 Am. Dec. 533; *Harcum's Admr.* v. *Hudnall,* 14 Gratt. (Va.) 369; *Ropp* v. *Minor,* 33 Gratt. (Va.) 97; *Marcy* v. *Graham,* 142 Va. 285, 128 S. E. 550; *Zane* v. *Sawtelle,* 11 W. Va. 43; *Brown* v. *Miller's Exrs.,* 45 W. Va. 211, 31 S. E. 956; *Lynch* v. *Spicer,* 53 W. Va. 426, 427, 44 S. E. 255. See also, *Craig* v. *Leslie,* 3 Wheat. 563, 4 L. Ed. 460; *Peter* v. *Beverley,* 10 Peters 532, 9 L. Ed. 522; *Fahnestock* v. *State,* 152 Pa. 56, 25 A. 313, 34 Am. St. Rep. 623; *In Re Vanuxems' Estate,* 212 Pa. 315, 61 A. 876, 1 L. R. A. (N. S.) 400; *Hendrick* v. *Probate Court,* 25 R. I. 361, 55 A. 881; *In Re Ingersoll's Estate,* 167 Pa. 536, 31 A. 858, 2 Amer. & Eng. Dec. 76, and notes, page 86; 1 Lomax on Executors, 386. In *Hendrick* v. *Probate Court, supra,* page 881, the court said:

"Testatrix directed her executor as soon as convenient after her death to sell her interest in certain real estate described, and pay over and divide the fund arising therefrom among certain persons named. Held, that such provision operated as an equitable conversion of the real estate into personalty, and impressed it with a trust in favor of the beneficiaries, and hence rents collected from such real estate before sale belonged to the beneficiaries, and was no part of the estate chargeable to the administrator with the will annexed."

Applying these authorities to the question before us, we have here an estate, the personalty of which is ap-

praised at $265.16, and the real estate, at $15,000.00. The record discloses that the testatrix, at the date of her will, believed her real estate to be worth much more than the amount at which it was appraised, but even if it were worth a sum substantially above the appraised value, the existence of debts, aggregating at least $2,000.00, the necessary expenses of administration, funeral bills, and the several bequests aggregating $13,510.00, leads us irresistibly to the conclusion that the sale of the real estate must have been intended by the testatrix. By no other possible means could her intentions, as disclosed by the will, be carried out. The directions as to the sale, in literal terms give to the executors discretion as to the necessity of the sale and the time when it should be made, but in view of the will as a whole, must be interpreted as being mandatory, in the sense of ultimate action. Mere technical language must give way to the necessity of an interpretation which will give effect to the purpose the testatrix had in mind. If, therefore, this direction to sell be construed as mandatory, the authorities cited are sufficient to authorize the application of the doctrine of equitable conversion, the effect of which was to convert the real estate of the testatrix into personal property, at the date of her death, therefore placing it under the control of the executors for administration and distribution. The general rule is that the conversion takes place at the date of the death of the testatrix. 6 R. C. L. 1087; *Effinger* v. *Hall*, 81 Va. 107.

> "The practical results of the doctrine of equitable conversion, as applied to the change of real into personal estate, are chiefly these: First, the rents of the estate between the death of the testator and the actual sale, go to the party who takes the proceeds; * * *."

*Wright et al.* v. *Trustees*, 1 Hoffman Chan. (N. Y.) 202, 218.

If the doctrine of conversion applies to the circumstances of this case, and the real estate of the decedent be treated as personalty for the purposes of the will, then it necessarily follows that the incomes go to the

executors and not to the residuary legatee. It may be conceded that the general rule is that, as to heirs, taking title by descent, and where the provisions of the will do not require the application of a different rule, devisees as well, the heir or devisee is entitled to rents as against debts and legacies until such rents are legally sequestered, or the property from which they arise is directed to be sold. *Hobson* v. *Yancey*, 2 Gratt. (Va.) 73; *Blow* v. *Maynard*, 2 Leigh (Va.) 29; *Dunn's Exrs.* v. *Renick*, 33 W. Va. 476, 10 S. E. 810; *Washington* v. *Castleman*, 31 W. Va. 832, 8 S. E. 603. These decisions, along with others which might be cited, are recognized and there is no disposition to depart therefrom. Where property passes under our statute of descent, there is rarely, if ever, a case where the rule can be departed from; on the other hand, such rule cannot be rigidly applied to a devisee, inasmuch as he necessarily holds under a will, and his rights are governed by the terms of the instrument under which he holds. Therefore, if the will, by its terms, creates a situation which operates either to create a trust in the hands of the executors by direct terms, or necessary implication, or to convert the property from real estate into personalty, his right to rents and profits fails, and such right vests in the executor. This we conceive to be this case. If the real estate here involved had been expressly devised to the residuary legatee, and the debts of the estate and legacies were small in amount, as compared to the value of the estate, and it could have been reasonably contemplated that the provisions of the will could be carried out without sale of the real estate, the right to collect rents contended for by the residuary legatee might be conceded. Here, however, we have a case where there is doubt whether the entire estate is sufficient for the payment of costs of administration, funeral expenses, debts and legacies, and at any rate, they will consume the greater part of the estate; and the testatrix must have had this situation in mind when she executed the will, even though she thought her estate more valuable than it developed to be. We are reluctant to establish a rule which, in an extreme case such as this,

allows a residuary legatee to collect rentals from a valuable estate, where legacies and other charges consume practically the entire amount thereof, and which may serve to prevent the carrying out of the intent of the testatrix as expressed by her will. We therefore hold that the executors should be held to account for the rents of the real estate of which Caroline Heeter died seized. In such accounting, they will be entitled to credit for any sums paid as taxes on the real estate, necessary repairs, and such other payments as may have been made by them, out of rents received, in settlement of debts and charges of the estate, and payment of legacies, where such payments do not operate as unlawful preferences over other creditors and legatees.

In the management of the estate here involved, the executors were vested with discretion as to the time and manner of sale of the real estate. We are not blind to the fact that opportunities for the sale of real estate, at a reasonable price, did not exist during a period beginning shortly after the date of the death of Caroline Heeter, and continuing to the date of the institution of this suit. Good faith efforts were made by the executors, and particularly by Hazel T. Martin, to secure a loan on this real estate to provide for debts and legacies, and the clear inference is that the plaintiffs acquiesced in these efforts; such acquiescences operate to estop them from complaining as to the delay in disposing of said property. We find no justification for holding that the executors have abused their discretion to the point where any liability attaches to them therefor. *Davis* v. *Davis Trust Company*, 107 W. Va. 141, 147 S. E. 490. It follows that there is no liability on the executors, jointly or individually, growing out of the performance of their duties with respect to the sale of the property. *Staple* v. *Staple*, 24 Gratt. (Va.) 225; *Mills* v. *Mills' Exr.*, 28 Gratt. (Va.) 442; *Harris* v. *Orr*, 46 W. Va. 261, 33 S. E. 257, 76 Am. St. Rep. 815. Therefore, interest on the legacies and decedent's debts should be paid out of the estate.

The first cross-assignment of error was waived by counsel for Hazel T. Martin at the oral argument. The

second cross-assignment of error assumes that the money spent by Hazel T. Martin for the improvements on the property of Caroline Heeter created a debt which she was entitled to charge against the estate of the decedent. When these improvements were made, Hazel T. Martin was living with her mother and the relations between them were apparently very close. No competent evidence was introduced showing any promise on the part of Caroline Heeter to pay for these improvements. In the absence of an express promise or an estoppel, we do not think, under all the circumstances, that there was a contract implied, either in law or fact. *Saunders* v. *Greever,* 85 Va. 252, 7 S. E. 391; *Thomas* v. *Thomas,* 69 Miss. 564, 13 So. 666; *Keller* v. *Joseph,* 329 Ill. 148, 160 N. E. 117; *Holesberry* v. *Harris,* 56 W. Va. 320, 49 S. E. 404; *Garren* v. *Shuck,* 306 Ill. 154, 137 N. E. 489.

The third cross-assignment of error is without merit. It is true that plaintiffs' legacies are all general legacies and if the estate proves insufficient to pay the costs of of administration, debts and legacies in full, the legacies will have to abate equally. 69 C. J. 936, 983. Hazel T. Martin, under the express terms of the will, being a residuary legatee and devisee, takes only the residue of the estate after the payment of debts and general legacies. This is clearly what the will intended and we cannot depart from its terms.

The decree of the circuit court of Kanawha County is reversed in part, affirmed in part and remanded for further proceedings in keeping with the provisions of this opinion.

*Reversed in part; affirmed in part; remanded.*

RILEY, JUDGE, dissenting:

With regret I dissent from the majority opinion of the court in so far as it holds that the executors and not Mrs. Martin are entitled to the rents and profits of the decedent's real estate.

The title to the real estate passed to Mrs. Martin as the residuary devisee. Having the legal title, she alone

was vested with the right to possess the property and collect the rents. This is in accordance with the statute (Code 1931, 37-6-10) which provides that "* * * when the owner of real estate in fee, or holder of a term, yielding him rent, dies, the rent thereafter due shall be recoverable by such owner's heir or devisee, or such termholder's personal representative or devisee." Even in the case of an insolvent estate, the right to the rent descends or passes to the heir or devisee. *Washington* v. *Castleman,* 31 W. Va. 832, 8 S. E. 603; *Lobdell* v. *Hayes,* 12 Gray (Mass.) 236. This right remains intact until the rents are sequestered or the inheritance or devise broken by a decree of sale or a sale of the property. *Hobson* v. *Yancey,* 2 Gratt. (Va.) 73; *Blow* v. *Maynard,* 2 Leigh (Va.) 29; *Dunn's Exrs.* v. *Renick,* 33 W. Va. 476, 10 S. E. 810. In the case of *Washington* v. *Castleman, supra,* in which a tenant who had a claim against the decedent's estate sought unsuccessfully to set off his claim against the heirs' claim for rent, Judge Snyder said: "The creditor, if the estate is insolvent, must share ratably with the other creditors in the proceeds of the realty. If the estate of the decedent is solvent, and even where it is insolvent, until they are sequestered by the court at the instance of creditors, the rents and profits of the realty are not liable for debts of the decedent. *Hobson* v. *Yancey,* 2 Gratt. (Va.) 73. The rents therefore stand on higher ground and are less liable for the payment of the decedent's debts, than is the real estate itself."

The provision of the will delegating to the executors the discretion to sell the decedent's real estate did not alter Mrs. Martin's right to the rents and profits. The cases recognize a clear distinction between a devise of real estate to executors for the purpose of sale and a naked power of sale. In the latter case, the devisee is entitled to the rents and profits. *Dunn's Exrs.* v. *Renick, supra; Bell's Admr.* v. *Humphrey,* 8 W. Va. 1; *Mosby's Admr.* v. *Mosby's Admr.,* 9 Gratt. (Va.) 584; Harrison, Wills and Administration, sec. 288. The great weight of authority in the United States is to like effect. *McCarty, Exr., etc.* v. *McCarty,* 356 Ill. 559, 191 N. E. 68, 94 A. L.

R. 1137, and note; *Hobson* v. *Yancey, et al., supra; Blow* v. *Maynard, supra; Dunn's Exrs.* v. *Renick, supra.*

In *Hobson* v. *Yancey, et al., supra,* the devisees sought to compel the executor to make settlement of the estate. The will provided that the executor shall have a discretion as to the sale of the decedent's real estate. The executor had collected rents and profits from the real estate and claimed credit for certain disbursements made by him. The court held that the heirs and devisees were entitled to the rents and profits from real estate until deprived thereof by decree of the court, and if the disbursements were less than the rents and profits, then the executor shall account to the devisees for the difference. In the opinion, the court said: "As to the rents and profits, *though they might in equity have been charged with debts, to the payment of which the personal estate might prove inadequate,* yet until the claim to charge them should be asserted by suit of the creditors, the heirs or devisees were entitled to them, without being accountable therefor to the creditors; and the executor receiving them was trustee of, and bound to account for them *to, the heirs and devisees.*" (Italics supplied)

In *Thomas* v. *Rector,* 23 W. Va. 26, a case followed by several West Virginia cases, the court held that the blending of the real and personal property together as one fund in the residuary clause indicates an intention on the part of the testator to charge the real estate with the payment of pecuniary legacies. In the instant case, the residuary clause is not the ordinary residuary clause. In it, the decedent recites that she has made Mrs. Martin her residuary devisee and legatee because of love and affection and because Mrs. Martin had expended money for improvements on the real estate. It would be most difficult to say that the decedent intended, in view of the recitals in the residuary clause, that the pecuniary legacies should be paid in all events, though the daughter, who lived with her during her last days, got nothing. A testamentary charge is not the title to real estate; it is simply a claim enforceable against real estate. It is analogous to a mechanic's lien or an equitable mortgage

or any other claim enforceable by decree of sale or under testamentary power of sale. Until the charge, if one exists, is enforced, by a sale of the property or by a sequestration of the rents, the title of the devisee remains undisturbed, and with it the right to rents and profits. *Brooks* v. *Jackson,* 125 Mass. 307; *Brengel* v. *O'Toole,* 103 N. J. Eq. 339, 143 A. 361. In the former case, the Supreme Judicial Court of Massachusetts said: "The provision in the will, by which the testatrix charged and bound her real estate, and authorized her executor to sell it, had no other force than to create a lien upon the estate, and a power to sell it to satisfy that lien. It did not affect the right of heirs or devisees in the rents until the power was executed by a sale. *Newcomb* v. *Stebbins,* * * * [9 Metc. 540] ; *Lobdell* v. *Hayes,* 12 Gray, 236."

The case of *Earle* v. *Coberly,* 65 W. Va. 163, 64 S. E. 628, not cited by counsel for either party, is to be distinguished from the instant case. That was a partition suit in which partition in kind was decreed. In order to partition real estate devised in the residuary clause of the will, it became necessary that the debts of the decedent be paid. This was necessary in order to perfect the title of the residuary devisee. A small part of the rents collected were applied to indebtedness due from the estate of the decedent.

The majority opinion in the instant case proceeds upon the theory that although the power of sale, provided for in the will, is in its terms discretionary, it is in fact mandatory. Therefore, the will gave rise to an equitable conversion of the real estate which took place immediately at the decedent's death. True, as the majority opinion says, the intention to convert real estate need not be expressed; "it may be necessarily implied". 3 Pom. Eq. Juris., (4th Ed.), section 1160. "Conversion is a fiction of equity applied in proper cases to carry out the intention of the testator, but, where the intention, or purpose, fails, the fiction will not be applied." 2 Pom. Eq. Juris. (4th Ed.), section 1091. This intention, however, because it is carried out by the use of a fiction, must be clear. Where doubt exists in the absence of an express in-

tention, conversion will not take place. 13 Corpus Juris, 864, Conversion, section 31 (d). Under the position taken by the majority of the Court, Mrs. Martin, a favorite daughter, who had lived with and cared for decedent during her latter years and until the time of her death, and who had spent several thousand dollars of her own money in improving the estate, will take nothing under the will. The entire estate, after the payment of debts, administration and funeral expenses, and costs of the maintenance of the property, will go to Mrs. Martin's brothers and sisters, who, under the will, are general legatees. I can see no equity in such a holding. It does not serve the ends of justice. It contravenes the intention of the testatrix and does not do equity among the interested parties. For these reasons, I feel constrained to dissent from the majority opinion.

Judge Maxwell authorizes me to state that he concurs in this dissent.