# Richmond

## Hope Morrison, Et Al. v. Carrie B. Morrison, Administratrix, Etc.

April 21, 1941.

Record No. 2332.

Present, Campbell, C. J., and Holt, Gregory, Browning, Eggleston and Spratley, JJ.

*Venable, Miller, Pilcher & Parsons* and *W. E. Kyle*, for the appellants.

*W. R. Ashburn*, for the appellee.

EGGLESTON, J., delivered the opinion of the court.

This is a continuation of the litigation which was before us in *Morrison* v. *Morrison*, 174 Va. 58, 4 S. E. (2d) 776. For the factual background and prior proceedings reference is made to the former opinion.

Suffice it to say here that the litigation originated by the filing of a bill in chancery by Carrie B. Morrison, widow of Edgar H. Morrison, who died intestate, to subject his lands in Virginia and in North Carolina to the payment of his debts, including a debt claimed to be due her, his personalty being insufficient for the purpose. Certain of the heirs contested the widow's claim. On the former appeal we affirmed, with a slight modifica-

tion, the decree which upheld the validity of Mrs. Morrison's claim. As modified by us, the decree adjudicated that the widow was entitled to be "treated as any other creditor" whose claim was paramount to the widow's dower rights, and that consequently 30% of the amount due to her should be discharged from the two-thirds interest in the North Carolina lands which passed immediately to the heirs subject to decedent's debts, and 70% thereof should be discharged from the two-thirds interest in the Virginia lands which were subject to the claims of the creditors, and in which the widow had a life interest subject to such claims, the fee being in the heirs. (174 Va., at page 70, 4 S. E. 2d, at page 781.)

To carry out the mandate of this court the lower court entered a decree on February 15, 1940, from which the present appeal has been taken.

Dower having been assigned to the widow in the North Carolina property, three of the remaining parcels of land with the buildings thereon, in that State, or so much thereof as might be necessary, were ordered to be sold by special commissioners appointed for that purpose, and the proceeds ordered applied to costs of sale, inheritance taxes due the State of North Carolina, 30% of the Federal estate tax, and 30% of the debt due to the widow.

A lot on Ocean avenue at Virginia Beach, with the buildings and improvements thereon, was ordered to be sold by the special commissioners, free of liens and free from dower, and the proceeds applied to discharge, in the order named: (a) the costs of sale; (b) a debt due to a local bank and paramount to the widow's dower; (c) the commuted dower interest of the widow in the property; (d) 70% of the costs of the suit; (e) 70% of the Federal estate tax, and (f) 70% of the debt due to Mrs. Morrison.

Out of the remaining Virginia real property the decree "tentatively set aside" certain property at the

southwest corner of Atlantic avenue and Seventeenth street, at Virginia Beach, "upon the assumption that the same is of the approximate value of the widow's life interest which is free from the claims of her husband's creditors."

The decree then directed the special commissioners to sell, in a designated order, so many of the remaining parcels of real property in Virginia, other than those specifically dealt with above, as might be necessary to yield a sum sufficient to discharge, in the order named: (a) the remainder of 70% of the debt due to Mrs. Morrison; (b) the remainder of 70% of Federal estate tax; (c) the commuted dower interest of the widow in the proceeds of sale remaining after deduction of the amount required to satisfy her husband's debts; (d) the costs of sale of these parcels of property; and (e) the remainder of 70% of the costs of the suit.

The decree further provided that, "The value of the dower interest of Carrie B. Morrison, widow, in the proceeds of sale so made remaining after deduction of the sum required to discharge her husband's debts, shall be payable to and thereafter to her, under the orders and directions of this court."

Shortly after the entry of the decree the appellant heirs filed objections and exceptions thereto and a motion for its vacation and modification. Upon the refusal of the court to set aside or modify the decree as requested, the present appeal was taken.

The main contention of the appellants is that, as far as possible, the decedent's debts should be discharged from the rents either heretofore collected by the widow or hereafter to become due, and particularly those derived from the two-thirds interest in the property subject to such debts, before any of the land is sold for that purpose.

In reply to this the appellee widow contends that it was adjudicated in the decree modified and affirmed by us on the former appeal, that the debts should be

paid out of the proceeds of the sale of the land itself, or so much thereof as may be necessary, and that this adjudication having become the law of the case precludes an inquiry now as to whether the rents and profits of the land may be looked to as a source of payment of the debts. This contention is not sound.

An examination of the record before us on the former appeal discloses that we were there concerned with what proportionate part of the debts should be borne by the real estate of the decedent located in the States of North Carolina and Virginia, respectively. We held that the debts should be discharged out of the real estate, subject to the debts, in these two States in the same proportion as the value of the land in each State bore to the value of the whole,—that is, 30% out of the North Carolina lands and 70% out of the Virginia lands. In that record no question was presented to the lower court or to us as to whether the debts should be discharged out of the income from the lands as distinguished from the proceeds of the sale of the lands. What we held on the former appeal does not preclude the widow, as creditor, from subjecting, in a proper proceeding, the rents to the payment of her debt, nor does it preclude the heirs from raising the question that the rents should be applied to that purpose.

The briefs of the appellants challenge the validity of the decree of sale appealed from on these grounds:

(1) The first contention is that under Code, §6472, the court was without jurisdiction to decree a sale of the real estate because the debt due to the widow has been reduced to judgment in this suit, and it appears from the prior proceedings in the cause that the rents and profits will discharge that judgment within five years.

We can not agree with this contention. Code, §6472, provides: "Jurisdiction to enforce the lien of a judgment shall be in equity. If it appears to the court that the rents and profits of the real estate subject to the lien will not satisfy the judgment in five years, the

court may decree the said estate, or any part thereof, to be sold, and the proceeds applied to the discharge of the judgment.''

Manifestly the statute applies to a suit in equity brought to subject the lands of a living debtor to the ''lien of a judgment'' thereon. It has no application to the present proceeding which is a suit in equity to subject the lands of a decedent to the payment of his debts. Code, §5395, makes real estate of a decedent assets for the payment of his debts regardless of whether they have been reduced to judgment. The present proceeding is brought under the latter statute and not under the former.

(2) It is next contended that, independent of Code, §6472, a court of equity has jurisdiction to sequester the rents derived from the two-thirds of the decedent's realty which is subject to his debts and apply them to the payment of such debts, and that this should be done here before any part of the realty is sold to satisfy the debts.

It is true that equity has power to sequester the rents derived from such of decedent's realty as is subject to his debts and apply them to that end. But it is well settled that until there has been an order of sequestration in an appropriate proceeding instituted by the proper party and under proper pleadings, the rents are not liable for the debts of the decedent.

In *Hobson* v. *Yancey*, 2 Gratt. (43 Va.) 73, 77, this court said: ''As to the rents and profits, though they might in equity have been charged with debts, to the payment of which the personal estate might prove inadequate, yet until the claims to charge them should be asserted by suit of the creditors, the heirs or devisees were entitled to them, without being accountable therefor to the creditors; * * * .''

In *Washington* v. *Castleman*, 31 W. Va. 832, 8 S. E. 603, 605, it is said: ''If the estate of the decedent is solvent, and even where it is insolvent, until they are sequestered by the court at the instance of creditors,

the rents and profits of the realty are not liable for the debts of the decedent. *Hobson* v. *Yancey*, 2 Gratt. 73. The rents, therefore, stand on higher ground, and are less liable for the payment of the decedent's debts, than is the real estate itself."

See also, *Peters* v. *Kanawha Banking & Trust Co.*, 118 W. Va. 484, 191 S. E. 581, 586; Harrison on Wills and Administration, §354(9), p. 650; 31 A. L. R. 4, note.

■ It is clear from these authorities that the right to have the rents sequestered and applied to the payment of the debts of the decedent is a remedy to which the creditor and not the heir is entitled. In the present case the creditor, the widow, has taken no steps to sequester the rents and have them applied towards the payment of the debt due her. We know of no principle of law which permits the heir to compel the creditor to apply for this remedy against her wishes. On the contrary, the creditor is free, if she so elects, to disregard the rents and ask that the porperty be sold to satisfy her debt.

(3) The appellants next contend that under Code, §5117, as amended, the rents derived from the two-thirds interest of the decedent's real estate subject to his debts, are primarily liable and the estate of the heirs in such lands is secondarily liable for the payment of such debts; that since the widow has collected from such property a sufficient amount of rents to discharge all debts, she should be required to pay them; and that when this is done it will not be necessary to sell any of the land.

So much of Code, §5117 (as amended by Acts 1922, ch. 490, p. 860; Acts 1924, ch. 304, p. 460), as is here material, provides that if the husband "die wholly intestate and without issue of the marriage which was dissolved by his death or of a former marriage, his widow shall be endowed of one-third of such real estate, as aforesaid, and, in addition thereto, subject to the rights of her husband's creditors, of all the residue of such real estate of her husband."

The argument of the heirs is that since this statute subordinates the widow's dower in two-thirds of the real estate to the claims of her husband's creditors, the effect is to compel her to pay the debts of the decedent if she is to enjoy the income from the property. Therefore, they say, her interest in the property is primarily liable for the payment of the debts.

Of course, if the land which is subject to the debts is sold to satisfy them, as between the widow and the heirs she would be the first to suffer, since she as life tenant would be deprived of the immediate income from the land. Therefore, to preserve her life interest in the two-thirds of the property which is subject to her husband's debts, the widow must discharge such debts.

But it does not follow from this that the heirs can compel the widow to pay the debts in order to preserve for herself the life interest, and incidentally to preserve for the heirs the reversionary interest, in the property which may be subjected by the creditors. The election is one for the widow and not for the heirs. She may elect to pay the debts and enjoy the income from the property, but she is not bound to do so to protect her interest, nor can the heirs compel her to do so to protect their interest.

In the present case the widow, as a creditor, has asked for a decree of sale of the two-thirds interest of the decedent's real estate which is subject to his debts. As the doweress or life tenant of the property she has elected not to pay the debts but to allow it to be sold to satisfy them. Clearly she is within her rights in this.

Neither do we think that the fact that the widow may have collected the rents from this property can affect her right to elect at this time that the property be sold to discharge the debts.

The conclusion we have reached on this phase of the case disposes of the heirs' contention that they are entitled to reimbursement by way of "contribution" or "exoneration" from the widow for the value of their re-

versionary interest in the lands which may be sold to pay the debts. In the absence of a primary obligation on the widow to discharge the debts, there is, of course, no such right of reimbursement.

(4) The next contention is that the lower court erred when it "tentatively set aside" certain property at Virginia Beach as the approximate value of the widow's dower in one-third of her husband's lands, which interest is superior to the rights of the creditors.

It is argued that until specific property is definitely set aside in satisfactoin of the widow's dower, it is impossible to determine what remaining property is to be sold free of such dower interest, for the widow may repudiate the tentative assignment and thereafter claim dower in other property which may be sold.

■ ■ We agree with the appellants that there can be no such thing as a tentative assignment of dower. A tentative assignment of dower is tantamount to no assignment at all. The decree should have definitely assigned to the widow, in satisfaction of her dower, that property which was "tentatively set aside" for her benefit. In that respect the decree must be modified.

However, in view of the other provisions and terms of the decree, the tentative assignment of dower to the widow was not, in our opinion, reversible error. The decree, the entry of which was requested by the widow, specifically provides that out of the proceeds of such property as may be sold to satisfy the debts, her dower interest is to be commuted and paid to her under the orders and directions of the court. Clearly under these circumstances and under such terms she would be estopped to be repudiate the tentative assignment and claim further dower interest in those pieces of property which are to be sold.

(5) The last contention is that the decree of sale of the real estate was erroneous because the amount of the taxes due thereon had not been ascertained.

■ In reply to this assignment of error the brief of

the appellee states that all of the real estate taxes have been paid in full. This is not denied in the appellants' reply brief and is apparently conceded. The assignment, therefore, does not constitute a valid objection to the decree of sale.

The decree appealed from will be modified to the extent herein indicated and affirmed.

*Modified and affirmed.*