# Richmond

## Mary B. Peatross and Others v. W. H. Gray, Assignee of Maggie H. Barker, and Others.

October 11, 1943.

Record No. 2703.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Meade & Talbott*, for the appellants.

*P. J. Hundley*, for the appellees.

EGGLESTON, J., delivered the opinion of the court.

Since we are to deal with several matters of procedure it will be necessary that the proceedings in the lower court be stated in some detail.

W. H. Gray filed a bill in the court below alleging that he was assignee of a judgment which Maggie H. Barker had obtained on April 8, 1930, against John W. Breedlove, in the sum of $289.91, with interest and costs, which had been duly docketed in the Clerk's Office of the Circuit Court of Pittsylvania county, and on which there was a balance due of $410 as of June 9, 1941; that Breedlove had died intestate in January, 1941, leaving surviving his widow, Harriet Breedlove, and his children, Mary B. Peatross, Dicey B. Adams and Berda B. Porter, his "only known heirs at law"; that Harriet Breedlove, the widow, had qualified as administratrix of her husband's estate but had herself died in June, 1941, without having administered the estate, and had been succeeded by C. C. Harvey as administrator; that Harriet Breedlove died intestate and was "survived by a number of children and grandchildren", and that one H. J. Still had qualified as her administrator.

It was alleged that at the time of his death Breedlove was "seized and possessed" of four tracts of land in Pittsylvania county, namely: Tract No. 1, containing fifty-two acres, more or less; Tract No. 2, containing fifty acres, more or less; Tract No. 3, containing thirty-six acres; and Tract No. 4, containing twenty-two acres (which is sometimes referred to in the proceedings as the "Home Place"); and that these properties were subject to a mortgage of $1,000 held by the Federal Land Bank of Baltimore, which was a prior lien to that of the plaintiff's judgment.

It was further alleged that since the recordation of the mortgage and the docketing of the judgment, Breedlove had conveyed Tract No. 2 to his wife, Harriet Breedlove, by deed dated April 23, 1932, and duly recorded, and that since her death there had been recorded in the clerk's office a deed by which she had conveyed the same property to Mary H. (B.) Peatross, Berda B. Porter and Dicey A. (B.) Adams, the appellants here, but that this last-named conveyance was void "and should be so declared in this proceeding."

It was also alleged that the "Home Place" tract of twenty-two acres was acquired by John W. Breedlove and Caleb Peatross, jointly, in 1904; that Caleb Peatross had "sold his undivided interest" in the property to Breedlove; and that while this deed could not be found, Breedlove had since been in possession of the property, had paid the taxes thereon, and was "entitled to have the cloud removed from said title."

The bill further alleged that Breedlove owned only an undivided interest in Tract No. 3 of thirty-six acres; that the remaining interest therein was owned by the heirs at law of Breedlove's deceased former wife, who "was a Peatross"; and that this latter interest was not subject to the lien of either the mortgage or the judgment.

There was an allegation that the rents and profits from the lands "will not be sufficient to discharge the indebtedness within five years"; that it would have to be sold "to satisfy said liens and other indebtedness"; and that it could not be "conveniently divided in kind, should the interested parties be able to satisfy said liens and indebtedness."

There was a further allegation that the estates of the two decedents, John W. Breedlove and his wife, Harriet Breedlove, "should be settled in this proceeding."

The process stated that the suit was brought by the plaintiff "who sues for himself and all other creditors of John W. Breedlove and Harriet Breedlove, deceased."

C. C. Harvey, administrator of John W. Breedlove, deceased, and Mary B. Peatross and Dicey B. Adams, two of

the appellants, were made parties defendant and process was served on them. Berda B. Porter, the remaining appellant, and Federal Land Bank of Baltimore were made parties defendant and proceeded against as non-residents by order of publication. "The unknown heirs of Caleb Peatross," "the unknown heirs of Harriet Breedlove, deceased," and "the unknown heirs of John W. Breedlove, deceased," were likewise made defendants and an attempt was made to serve process on them by order of publication. "The administrator of Harriet Breedlove, deceased," was made a party defendant by that designation and without being named either in the prayer of the bill or in the process. While no process was served on him, he later appeared and filed an answer.

The bill prays for process against a number of other persons. Some of these can be identified by the evidence later taken and some by the statements in the briefs. The identity of others and their connection with the cause remain an inscrutable mystery.

The bill prayed that the land described be sold and "the proceeds distributed as directed by law"; "that the cloud may be removed from the land in question"; and that the plaintiff be given general relief.

C. C. Harvey, the administrator of John W. Breedlove, deceased, and the appellants filed a joint demurrer alleging the insufficiency of the bill of complaint in that while its purpose was to subject the lands of Breedlove, the decedent, to the payment of his debts, it did not allege that Breedlove's administrator had settled his accounts.

The demurrer was overruled and the cause was referred to a commissioner in chancery who was directed to ascertain and report the usual accounts.

Before the commissioner, counsel for the plaintiff and the then counsel for the three defendants who are now the appellants, entered into a written stipulation in which it was agreed that since the deed from Harriet Breedlove to Mary H. (B.) Peatross, Berda B. Porter and Dicey A. (B.) Adams, dated January 14, 1941, and mentioned in the bill

of complaint, had not been properly acknowledged, it was "of no effect and void."

Pending the hearing before the commissioner the plaintiff filed a petition in which he alleged that since the commencement of the proceeding he had acquired the mortgage due by Breedlove's estate to the Federal Land Bank of Baltimore, which was past due and in default. Thereupon the bank was dismissed as a party defendant to the cause.

Upon the stipulation of counsel and brief depositions taken, the commissioner reported that at the time of his death Breedlove owned two tracts of land containing fifty* and twenty-two acres (Tract No. 4), respectively, and an undivided six-sevenths interest in a tract of thirty-six acres (Tract No. 3), the other one-seventh interest being owned by his daughters, Dicey B. Adams and Berda B. Porter.

The commissioner also held that Harriet Breedlove died seized and possessed of a tract of fifty acres (Tract No. 2).

The report showed the following liens and debts due by Breedlove's estate:

| | |
|---|---:|
| Taxes ..............................$ | 49.59 |
| W. H. Gray, assignee of Federal Land Bank of Baltimore mortgage.......... | 886.60 |
| W. H. Gray, assignee of Barker judgment | 410.00 |
| C. C. Harvey, funeral expenses......... | 207.00 |
| | $1,553.19 |

The mortgage debt of $886.60 was held to be a first lien on the fifty-two-acre and thirty-six-acre tracts owned by John W. Bredlove, and on the fifty-acre tract owned by Harriet Breedlove. The judgment of $410 was held to be a lien on the lands owned by John W. Breedlove, as well as the fifty-acre tract which he had conveyed to Harriet Breedlove, his wife, while the funeral expenses

---

*This acreage is incorrect as manifestly the reference is to Tract No. 1 which contains fifty-two acres.

were found to be a lien against Breedlove's estate after the payment of the foregoing items.

The only debts due by the estate of Harriet Breedlove were the taxes of $16.53, and the funeral expenses of her husband for which she had become obligated on a note signed by her and others. Apparently this latter item was secured by a deed of trust on the fifty acres which she had acquired from her husband and which she had undertaken to convey to the appellants.

No exceptions having been filed to the commissioner's report, it was confirmed. In this decree the court, in accordance with the stipulation to which we have referred, set aside and annulled the deed from Harriet Breedlove to the appellants, dated January 14, 1941, conveying the fifty acres of land (Tract No. 2).

The court also decreed that prior to his death John W. Breedlove had acquired, by a deed which was delivered but lost, the one-half undivided interest of Caleb Peatross in the "Home Place" of twenty-two acres (Tract No. 4), and was, therefore, entitled to a fee-simple interest therein.

It further decreed that the thirty-six-acre tract (Tract No. 3) in which Breedlove owned an undivided six-sevenths interest, was not susceptible of partition in kind.

Special commissioners were appointed and directed, after due advertisement, to sell the four tracts of land to the highest bidder for cash.

The special commissioners reported that after due advertisement they had offered the property for sale at public auction for cash; that W. H. Gray had become the purchaser of Tracts Nos. 1 and 2, at the sum of $1,605, and Tract No. 3, at the sum of $805; and that Tract No. 4 had been bid in by H. J. Gray at the sum of $2,350, or a total of $4,760. The commissioners recommended that these bids be accepted and the sales confirmed.

Pending the confirmation of the sale, Mary B. Peatross and Dicey B. Adams, two of the appellants, filed their petition in which they alleged that their former counsel had not been authorized by them to stipulate that the deed

from Harriet Breedlove to the petitioners and to Berda B. Porter was null and void; that the property had been decreed to be sold without the taking of the proper accounts of the debts due by the estate of John W. Breedlove, deceased; and that all necessary and proper parties interested in the lands were not before the court.

The petition prayed that the sale be not confirmed, that the decree of sale be annulled, and that the matter be recommitted to a commissioner in chancery with directions to take the necessary and proper account of the liens, debts and demands against the estate of the decedent, John W. Breedlove.

After due consideration the lower court overruled the contentions made in this petition, confirmed the commissioners' report of sale, and decreed that deeds be given to the purchasers for the properties bid in by them.

The decree recommitted the cause to a commissioner in chancery directing him to take an account of the personal property in the hands of the respective administrators of the decedents, John W. Breedlove and Harriet Breedlove, and an account of the liens, debts and demands against the estate of each of the decedents.

The commissioner was further directed to ascertain and report whether the deed from Harriet Breedlove to Mary H. (B.) Peatross and others, the appellants, dated January 14, 1941, "is valid or has been vacated, annulled and set aside with their consent," and the parties who are entitled to the proceeds from the sale of the fifty acres of land described in that deed.

From this decree Mary B. Peatross, Dicey B. Adams and Berda B. Porter have appealed.

Counsel for the appellee (the plaintiff below) insists that this is primarily a suit brought under Code, section 6472, to subject the lands of John W. Breedlove to the lien of the Barker judgment, and that the correctness of the procedure should be tested by the principles applicable to such a suit. But except for the fact that the plaintiff's original claim is evidenced by a judgment, the suit has none of the character-

istics of a proceeding under Code, section 6472. On the other hand, it has all the traits of a general creditors' suit brought under Code, section 5395, to subject the lands of the decedents, John W. Breedlove and Harriet Breedlove, to the payment of their debts. The process states that it is brought "by W. H. Gray, Assignee of Maggie H. Barker, who sues for himself and all other creditors of John W. Breedlove and Harriet Breedlove, deceased." The "Memorandum of Object of Suit" and the "Order of Publication" state that the object of the suit is "To subject the estate of John W. Breedlove to the payment of his debts". The bill alleges that the estates of both decedents "should be settled in this proceeding". The matters which the decree of reference directs the commissioner to report on—"What land or interest in land" of which the decedents "died seized and possessed," the liens thereon and the order of their priorities, the "indebtedness" of each decedent—are peculiar to a general creditors' suit as distinguished from a judgment lien creditor's suit. Again, the commissioner's report fixes all debts of both decedents, both secured and unsecured.

All of these things indicate, beyond question, that the proceeding is primarily a general creditors' suit.

In this State it is well settled that while the real estate of a decedent may be subjected to the payment of his debts, yet the personal estate is the primary fund which should be first applied and exhausted before the real estate is ordered to be sold. *New* v. *Bass, etc., Co.,* 92 Va. 383, 388, 389, 23 S. E. 747, and authorities there cited: *Todd* v. *McFall,* 96 Va. 754, 762, 763, 32 S. E. 472; *Kirby* v. *Booker,* 122 Va. 291, 295, 94 S. E. 775; *Swann* v. *Housman,* 90 Va. 816, 819, 20 S. E. 830; *Scott* v. *Ashlin,* 86 Va. 581, 587, 10 S. E. 751. And this is true even though the debts be secured by a lien given by the decedent in his lifetime on the real estate. *New* v. *Bass, etc., Co., supra* (92 Va. 383, at page 389, 23 S. E. 747); *Todd* v. *McFall, supra* (96 Va. 754, at page 763, 32 S. E. 472).

In the present proceeding this fundamental rule was ignored. Although the administrators of both decedents

were made parties defendant to the suit, no accounting has been required of them, and the real estate was ordered to be sold before it had been ascertained whether the personalty of either decedent was sufficient to satisfy his or her debts.

The commissioner's report shows that the debts which were sought to be enforced in this suit were the primary obligations of the decedent, John W. Breedlove, and his funeral expenses. The principal of these appears to be less than $1,600. The only claims shown due by the estate of the decedent, Harriet Breedlove, were the funeral expenses of her husband, for which she had become responsible, and a small item of taxes amounting to less than $20.

It thus appears that the debts of both of the decedents amount to less than $2,000.

Since there has been no exhaustion of the personal property, or a final accounting by the administrators, we have no way of knowing to what extent the real estate must be resorted to for the satisfaction of the claims. But even if it be assumed that the personalty of John W. Breedlove is insufficient to discharge any substantial part of his indebtedness, it is by no means certain that it would be necessary to sell all of the property of both decedents, as was done here.

The report of the special commissioners shows that the four pieces of property brought $4,760, while, as we have said, the total of the debts of both decedents amounts to less than $2,000. To confirm such a result would manifestly result in the gravest injustice to some of the parties interested. As Mr. Justice Spratley pointed out in *Tackett* v. *Bolling*, 172 Va. 326, 333, 1 S. E. (2d) 285, 288, when real estate is divisible in parcels, as here, the "authority to further sell other parcels is exhausted when a sufficient amount has already been realized in a completed sale or sales to satisfy the lien and the costs of the proceeding. * * * The rule is supported by reason, common sense, justice, and equity, authorities of the highest order. Any other rule might conceivably result in the gravest injustice."

■ Moreover, since the primary purpose of the proceeding was to subject the lands of which John W. Breedlove died seized and possessed to the payment of his debts, including those secured by specific liens, that which stood in his name should have been sold before the tract of fifty acres which he had conveyed to his wife, Harriet Breedlove. *Harman* v. *Oberdorfer*, 33 Gratt. (74 Va.) 497; *Whitten* v. *Saunders*, 75 Va. 563, 567; *Nelson* v. *Turner*, 97 Va. 54, 59, 33 S. E. 390. See also, Code, section 6476.

We are further of opinion that the lower court was in error in holding, upon the record before us, that John W. Breedlove had acquired the undivided one-half interest of Caleb Peatross in the "Home Place" tract of twenty-two acres. The allegation in the bill is that Caleb Peatross, now deceased, had conveyed his undivided one-half interest in the property to Breedlove, but that the deed for such conveyance had been lost. In order to establish this claim it was, of course, necessary that the heirs of Caleb Peatross, deceased, be made parties defendant to the bill. Such heirs were alleged to be "unknown", and an effort was made to proceed against them by an order of publication under Code, sections 6069 (as amended by Acts 1938, ch. 50, p. 100) and 6070.

In our opinion the order of publication did not meet the requirements of Code, section 6070. That statute provides that, "Every order of publication shall give the abbreviated style of the suit, state briefly its object, and require the defendants against whom it is entered, or the unknown parties, to appear within ten days after due publication thereof and do what is necessary to protect their interests. * * * "

■ ■ The order of publication takes the place of process, and its purpose is to bring a party into court, to apprise him of the nature of the proceeding against him (*Scott* v. *Scott*, 142 Va. 31, 36, 128 S. E. 599), and to notify him that his rights will be affected thereby. Since notice by publication is constructive only, the order of publication, as well as the statute authorizing it must be strictly con-

strued. *Steinman* v. *Jessee*, 108 Va. 567, 572, 62 S. E. 275;
*Dillard* v. *Krise*, 86 Va. 410, 412, 10 S. E. 430.

Here the order of publication merely states:

"The object of this suit is to subject the estate of John
W. Breedlove to the payment of his debts; to remove cloud
from title of tracts of land containing 160 acres, more or
less, involved in this suit, situated near Brosville, adjoining
W. H. Gray, Hylton and others; to determine the names
of all parties interested and the proper distribution of said
estate after satisfaction of all legal claims;

"And an affidavit having been made and filed that the
defendants, Berda B. Porter, William Porter, John Peatross,
Federal Land Bank of Baltimore and unknown parties, are
not residents of the State of Virginia, it is ordered that
they do appear here within ten days after due publication
hereof, and do what may be necessary to protect their
interest in this suit."

There is nothing in this notice to indicate that the
unknown parties therein referred to are the heirs of Caleb
Peatross, or that the rights of the latter are or may be
affected by the suit. Hence the process was fatally defective
as to them and the court was without jurisdiction to enter
a decree of sale affecting their interest in the property.

We should observe in passing that the same is true of
"the unknown heirs of Harriet Breedlove, deceased."

Nor do we think that the evidence adduced is sufficient
to sustain the allegation in the bill that John W. Breedlove
acquired the undivided one-half interest of Caleb Peatross
in the "Home Place" of twenty-two acres by a deed which
has since been lost.

The sole testimony on the subject is that of Mary B.
Peatross, one of the appellants. She stated that her father
and Caleb Peatross had purchased the property from G. T.
Green in January, 1904, and that "Some time during 1900
(*sic*), which was about the time the deed was made",
Breedlove acquired Peatross's interest in the land. When
asked what had become of the deed, her reply was: "John

W. Breedlove had all of those papers together, but after his death we weren't able to find them."

We have not a word as to the consideration paid, or the circumstances under which the alleged conveyance was made, or that a deed was prepared, executed and delivered.

■ We have repeatedly held that the proof of the former existence, the loss and contents of a deed and will should be "strong and conclusive" before the courts will establish a title by parol testimony to property which the law requires shall pass only by deed or will. *Branham* v. *Clinchfield Coal Corp.*, 123 Va. 346, 349, 350, 96 S. E. 761, and cases there cited.

■ The evidence adduced here falls far short of this requirement.

The record discloses that an undivided six-sevenths interest in Tract No. 3, containing thirty-six acres, was owned by the decedent, John W. Breedlove, while an undivided one-seventh interest therein is owned by the appellants, Dicey B. Adams and Berda B. Porter. This latter interest is subject neither to the liens against Breedlove's property nor to any of his debts. And yet the court ordered the property to be sold without any evidence or a finding of the commissioner that it was not susceptible of partition in kind.

■ While under Code, sections 5279 and 5281, a lien creditor may compel partition of land, or a sale thereof when partition cannot conveniently be made, the court has no authority to order such a sale unless it is made to appear by an inquiry before a commissioner or otherwise that partition cannot be made in some of the modes provided by the statute. *Howery* v. *Helms*, 20 Gratt. (61 Va.) 1, 8; *Cunningham* v. *Johnson*, 116 Va. 610, 612-613, 82 S. E. 690.

The same principle, of course, will apply to the "Home Place" of twenty-two acres should it develop that the heirs of Caleb Peatross have an undivided one-half interest therein.

The appellants assign as error the action of the trial court in setting aside and annulling the deed from Harriet Breed-

love to them, dated January 14, 1941. Apparently this action of the court was based on the written stipulation of counsel for the respective parties, wherein it was agreed that the deed was "of no effect and void" because it was not properly acknowledged. Subsequently, as we have seen, the appellants denied the authority of their then counsel to bind them by this stipulation.

In our opinion the action of the court in setting aside the deed on this ground was erroneous. The precise question was before this court in *Gannaway* v. *Federal Land Bank*, 148 Va. 176, 179, 138 S. E. 564. We there said: "No acknowledgment of this deed was necessary in order to convey the title. The deed operated as a conveyance without a n y acknowledgment. Code, section 5146. Acknowledgment is necessary for recordation [Code, section 5204], not to pass title. Title passes by the execution and delivery of the deed."

Under Code, section 5194 (as amended by Acts 1922, ch. 285, p. 474), this deed would be "void as to all purchasers for valuable consideration without notice not parties thereto and lien creditors". Here no purchaser from Harriet Breedlove is claiming against the deed from her to the appellants. Again, while the matter is not clear, we gather from the commissioner's report that Harriet Breedlove conveyed this property in trust to secure the funeral expenses of her husband. This latter debt is, of course, the primary obligation of the estate of John W. Breedlove, and apparently the property owned by him is more than sufficient to discharge all of the indebtedness against his estate. If this be true, it will not be necesary to resort to any of Harriet Breedlove's property, or that which the appellants claim she conveyed to them.

However, should it become necessary to subject this latter property to this mortgage, the conveyance from her to the appellants would be void as to that lien under the provisions of Code, section 5194, as amended.

Apparently there was some doubt in the mind of the Court as to the propriety of its action in vacating and an-

nulling the deed from Harriet Breedlove to the appellants, for in the decree appealed from the commissioner was directed to ascertain and report upon the validity of that deed "and the parties entitled to the proceeds from the sale of the land" described therein. But manifestly the proper time to have determined the rights of the parties was before the property in which they claim an interest had been sold, and not afterwards.

Appellants make the further point that the court should not have decreed a sale of the property of John W. Breedlove before first ascertaining whether the rents therefrom would have discharged the judgment lien claim of the plaintiff, W. H. Gray, within five years.

This contention is without merit. As we have said, while the plaintiff's principal claim is represented by a judgment lien, the primary purpose of the suit is to subject the lands of the decedent, Breedlove, to the payment of his debts, under Code, section 5395. In such a suit the sufficiency of the rents to discharge a judgment debt is not an issue. *Morrison* v. *Morrison*, 177 Va. 417, 423, 424, 14 S. E. (2d) 322, 325; 1 Barton's Chancery Practice, 3d Ed., pp. 198, 199; 2 Harrison on Wills and Administration, section 581, p. 924.

It follows from what we have said that the decree of sale is fatally defective and should be annulled and set aside. The decree appealed from is reversed and the cause is remanded for further proceedings in conformity with the views here expressed.

*Reversed and remanded.*